IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JONNA ANGEL SMITH, Individually          )
and on Behalf of All Other Persons        )
Similarly Situated,                       )
                                          )        Case No. 2:16-cv-841
                    Plaintiff,            )
                                          )        District Judge Mark R. Hornak
                                          )        Magistrate Judge Lisa Pupo Lenihan
         v.                               )
                                          )
                                          )        ECF No. 8
RGIS, LLC,                                )
                                          )
                    Defendant.            )
                                          )

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Compel Arbitration, Strike Class/Collective Allegations, and Stay Litigation be granted.

### II.    REPORT

Plaintiff Jonna Angel Smith filed this class and collective action against Defendant RGIS, LLC, seeking relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), for overtime pay violations, and under the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, et seq. ("PMWA"), for overtime pay violations and failure to pay for "travel time."  RGIS submits that Plaintiff is bound by the mutual, mandatory arbitration agreement set forth in RGIS' Dispute Resolution Program ("DRP"), which requires her to submit her claims against RGIS to binding, individual

arbitration.  Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., RGIS has filed a motion asking the Court to compel Plaintiff to arbitrate her claims on an individual basis, to strike the collective and class allegations from the Complaint, and to stay this action pending resolution of the arbitration.  In response, Plaintiff has filed a memorandum in opposition arguing that the collective/class action waiver is unlawful under the National Labor Relations Act ("NLRA") and Norris-LaGuardia Act ("NLA").

Plaintiff also filed a motion to stay the proceedings (ECF No. 18) pending a ruling from the U.S. Court of Appeals for the Third Circuit in *The Rose Group d/b/a Applebee's Restaurant v. National Labor Relations Board*, No. 15-4092 and No. 16-1212.  Oral argument was held on Defendant's motion to compel arbitration and Plaintiff's motion to stay the proceedings on 12/8/16.  Judge Hornak granted Plaintiff's motion to stay and ordered the case administratively closed on 12/13/16.  *See* ECF No. 27.

In January 2017, the Supreme Court granted certiorari in cases from the Fifth, Seventh, and Ninth Circuits,[1] involving similar facts and issues as those raised in *The Rose Group* appeal pending before the Third Circuit.  Observing that no decision had been issued by the court of appeals in *The Rose Group* since oral argument on 10/5/16, most likely due to the Supreme Court's grant of certiorari, this Court issued an order to show cause why the stay should not be lifted and the motion to compel reactivated on

---

[1] On January 13, 2017, the Supreme Court granted petitions for writs of certiorari filed in *Epic Systems Corp. v. Lewis*, No. 16-285 (Seventh Circuit); *Ernst & Young LLP v. Morris*, No. 16-300 (Ninth Circuit); and *NLRB v. Murphy Oil USA, Inc.*, No. 16-307 (Fifth Circuit). Reply briefs are due in these cases by 9/8/17, and oral argument was heard on 10/2/17.  *See* Docket in *NLRB v. Murphy Oil USA, Inc.*, No. 16-307, https://www.supremecourt.gov/search.aspx?filename=/docketfiles/16-307.htm).

6/7/17.  *See* ECF No. 30 (text order).  The parties filed their respective responses and on

6/27/17, Judge Hornak issued an order lifting the stay and reopening the case.  *See* ECF

No. 33.  The parties were granted twenty-one days to file supplemental briefs to raise

any new arguments or authorities not previous discussed in their respective filings.

Both parties submitted supplemental briefs on 7/18/17 and Defendant's motion to

compel arbitration is now ripe for disposition.

 A. **Factual Background**

  Plaintiff was hired by RGIS on 12/30/13 and as a new hire, she received a

complete copy of the RGIS Dispute Resolution Program Booklet ("DRP Booklet")

through RGIS' onboarding portal.  (Decl. of Nicole M. Wilson ("Wilson Decl.") at ¶ 8,

Ex. 1 to Def.'s Mem. in Supp. Mot. to Compel Arb., ECF No. 9-1 at 4; Ex. C to Wilson

Decl., ECF No. 9-1 at 42-44.)  The RGIS DRP Notice Letter, located at the beginning of

the DRP Booklet provided to Plaintiff, states:  "**PLEASE MAKE SURE THAT YOU**

**READ THE PROGRAM BOOKLET SO THAT YOU ARE FAMILIAR WITH ALL**

**PHASES OF THE PROGRAM AND BECAUSE IT CONTAINS IMPORTANT**

**INFORMATION RELATED TO YOUR LEGAL RIGHTS.**"  *See* DRP Booklet at p. ii,

ECF No. 9-1 at 11.  The RGIS DRP Notice Letter further provides:  "**The decision to be**

**covered by the Program is yours.  You are automatically covered by the Program**

**unless and until you exercise the option to exclude yourself by submission of the**

**Dispute Resolution Program Exclusion Form within 60 days of your hire date.**  *Id.*

  The DRP Program consists of five phases for resolving workplace problems.

DRP Booklet at 1-2, ECF No. 9-1 at 12-13.  The fifth phase of the DRP Program involves

mandatory, final and binding arbitration ("Arbitration Agreement").  *Id.* at 1, 3, 10-19,

ECF No. 9-1 at 12, 14, 23-32.

Plaintiff expressly acknowledged receipt of the DRP Booklet on 12/30/13 by

electronically signing the Team Member Handbook With Dispute Resolution Program

Acknowledgement of Receipt ("Acknowledgement").  (Wilson Decl. at ¶ 9; Ex. D

attached to Wilson Decl., ECF No. 9-1 at 45-47.)   RGIS maintains that by signing the

Acknowledgement, Plaintiff indicated that she received an electronic copy of the DRP

Booklet and had the opportunity to read and review it.  (Ex. D attached to Wilson Decl.)

In addition, the Acknowledgement provides:

> I acknowledge and understand that I will be covered by all
> five phases of the Dispute Resolution Program unless I
> return the Dispute Resolution Program Exclusion Form
> (contained in the Program Booklet) within 60 days of my
> hire date. I acknowledge that the Program requires RGIS and
> me to submit all claims arising out of my employment or
> termination of my employment, including claims regarding
> legally protected rights and benefits[,] to final and binding
> arbitration rather than to a judge and jury in court. I also
> agree that under the Program, final and binding arbitration
> will be the sole and exclusive remedy for any such claim or
> dispute against RGIS or another RGIS employee, if the
> dispute is not resolved by another phase of the Program.
> Under the Program[,] both RGIS and I agree to use
> arbitration and forego any right either of us may have to
> pursue any claims or disputes covered by the Program in
> state or federal court, including the right to join or
> participate in a class, collective or representative action, such
> as a private attorney general or a representative of others, or
> otherwise consolidate a covered claim with the claims of
> others.

(*Id.*)  The Acknowledgement further provides, in bold-typeface and all capital letters,

above Plaintiff's electronic signature, that "**I UNDERSTAND THAT THE RGIS**

**DISPUTE RESOLUTION PROGRAM CONTAINS A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES.**" (*Id.*)  On January 21, 2014, RGIS also sent a hard copy of the DRP Booklet to Plaintiff's home address. (Wilson Decl. at ¶11; Ex. F attached to Wilson Decl., ECF No. 9-1 at 50-56.)

Plaintiff did not submit an Exclusion Form to RGIS within 60 days of her hire date or any time thereafter, and therefore, according to RGIS, Plaintiff did not opt out of the DRP.  (Wilson Decl. at ¶13.)  On March 7, 2014, after the conclusion of the 60-day opt-out period, RGIS sent Plaintiff a postcard confirming her agreement to be bound by the DRP, including the arbitration agreement.  (*Id.*)  Plaintiff did not respond to this follow-up communication.  (*Id.*)  Nor did Plaintiff ever contact RGIS' Office of Dispute Resolution concerning the DRP to ask questions or otherwise object to being required to utilize final, binding arbitration under the DRP, during her employment.  (*Id.*)

### The Arbitration Agreement

Several provisions of the Arbitration Agreement are pertinent to the issues raised in the pending motion.  As to which claims are subject to arbitration, the Arbitration Agreement provides that "all claims between [the employee] and the Company that involve legally protected rights are subject to arbitration[,]" except as otherwise stated in the DRP Booklet.  DRP Booklet at 12 (ECF No. 9-1 at 25).  The Arbitration Agreement defines "legally protected rights" as "any claim or dispute that a court (judge or jury) would otherwise decide."  *Id.*  Specifically excluded from arbitration are claims pertaining to employee benefits plans subject to separate dispute resolution provisions and/or exhaustion of remedies that would conflict with the DRP, such as any ERISA or

disability plan administered by RGIS, workers compensation claims, and claims for unemployment insurance benefits. *Id.* at 13 (ECF No. 9-1 at 26). Thus, it appears that Plaintiff's claims under the FLSA and PMWA are subject to arbitration.

The Arbitration Agreement further provides:

> **THE RGIS EMPLOYEE DISPUTE RESOLUTION PROGRAM IS THE SOLE MEANS OF RESOLVING EMPLOYMENT-RELATED DISPUTES BETWEEN YOU AND THE COMPANY OR YOU AND ANOTHER EMPLOYEE, INCLUDING DISPUTES FOR LEGALY PROTECTED RIGHTS SUCH AS FREEDOM FROM DISCRIMINATION, RETALIATION OR HARASSMENT. IN ADOPTING THIS PROGRAM, RGIS AGREES ALSO TO ITS TERMS.**

*Id.* at 12 (ECF No. 9-1 at 25). Under the Arbitration Agreement, employees are free to consult or file a complaint with any appropriate state or federal agency, such as the Department of Labor, regarding their legally protected rights, but they are required to use the DRP instead of a trial if they are not satisfied with the agency process. *Id.* Should the employee file a lawsuit involving claims covered by the DRP, the Arbitration Agreement states that the "Company will ask the court to dismiss the lawsuit and refer it to arbitration." *Id.* at 12-13 (ECF No. 9-1 at 25-26).

The Arbitration Agreement also contains a class/collective action waiver:

> **YOU AND RGIS AGREE TO BRING ANY DISPUTE IN ARBITRATION ON AN INDIVIDUAL BASIS ONLY, AND NOT ON A CLASS, COLLECTIVE, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL BASIS. THERE WILL BE NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE BROUGHT, HEARD OR ARBITRATED AS A CLASS, COLLECTIVE, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL PROCEEDING, INCLUDING WITHOUT LIMITATION PENDING BUT NOT CERTIFIED CLASS**

ACTIONS ("CLASS ACTION WAIVER").  Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.  To the extent any portion of the Class Action Waiver is found to be unenforceable, that portion shall be severable and the remainder shall be enforced.

The agreement to arbitrate disputes shall not apply to the extent (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds the Class Action Waiver unenforceable.  In such circumstances, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction.

Although employees will not be retaliated against or threatened with discipline for exercising rights under section 7 of the National Labor Relations Act by the filing of or participating in a class, collective, representative or private attorney general action, RGIS may lawfully seek enforcement of the Program and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of any such class, collective, representative and/or private attorney general actions.

*Id.* at 17-18 (ECF No. 9-1 at 30-31).

**B.**     **Legal Standard – Motion to Compel Arbitration**

In the past, the U.S. Court of Appeals for the Third Circuit has been inconsistent in its pronouncement of the standard to be applied in evaluating motions to compel arbitration, vacillating between a Rule 12(b)(6) and Rule 56 standard of review. *Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 771 (3d Cir. 2013).*  Consequently, in *Guidotti*, the court of appeals clarified which standard of review should be applied in evaluating motions to compel arbitration:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Somerset*, 832 F. Supp.2d at 482. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting 9 U.S.C. § 4).

*Id.* at 776.

In evaluating a motion to compel arbitration under the Rule 56 standard, courts "'may consider all affidavits, exhibits and discovery in the record.'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 763 F.Supp. 2d 707, 715 (E.D.Pa. 2011) (quoting *Hopkins v. New Day Fin.*, 643 F.Supp. 2d 704, 713-14 (E.D.Pa. 2009) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 & n. 9 (3d Cir.1980))), *rev'd on other grounds*, 673 F.3d 221 (2012). A motion to compel arbitration should be granted only where "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Quilloin*, 673 F.3d at 228 (quoting Fed. R. Civ. P. 56). "In making this determination, the party opposing arbitration is entitled to 'the benefit of all reasonable

doubts and inferences that may arise."' *Kirleis v. Dickie, McCamey & Chilcote, 560 F.3d 156, 159 (3d Cir.2009).*

At oral argument on Defendant's motion to compel arbitration, the undersigned asked counsel which standard should be applied here—the Rule 12(b)(6) or Rule 56 standard. *See* Transcript of Oral Argument 1/17/17 ("Tr.") at 27 (ECF No. 28). Counsel for Defendant responded that the Rule 56 standard should be applied, because it has presented evidence in support of its motion, and there does not appear to be any factual disputes, as Plaintiff had not raised any in her filings up to that point. *Id.* Plaintiff's counsel, on the other hand, took the position that the Court should either analyze the motion to compel arbitration under the Rule 12(b)(6) standard, disregarding all of Defendant's evidence, or delay ruling on the motion until he has had an opportunity to conduct limited discovery to "probe into the veracity of any of the assertions made in the Defendant's affidavit."[2] Tr. at 32-35.

In the instant matter, the Complaint on its face fails to assert any allegations suggesting that the stated claims may be subject to an enforceable arbitration agreement.[3] As such, the Court is unable to rule on the merits of Defendant's motion merely on the factual allegations in the Complaint, and therefore, Defendant's motion cannot be decided under the Rule 12(b)(6) standard.

---

[2] Plaintiff is referring to the Declaration of Nicole M. Wilson, attached as Exhibit 1 to Defendant's memorandum in support of its motion to compel arbitration (ECF No. 9-1).
[3] The Complaint does not refer to or rely upon any documents that indicate the claims set forth in the Complaint are subject to arbitration.

Rather, the facts and documentary evidence, upon which Defendant's motion are predicated, are contained in the exhibits attached to its supporting memorandum and include, among other things, a copy of the Dispute Resolution Program (setting forth the agreement to arbitrate and class/collective action waiver) and the Declaration of Nicole M. Wilson, attesting to the notice provided to Plaintiff regarding the DRP, the arbitration provision, and the opportunity to opt-out, and Plaintiff's acknowledgement of receipt of same.   Therefore, the Rule 56 standard must be applied to Defendant's motion to compel arbitration.

The only question remaining with regard to the legal standard is whether Plaintiff should be allowed to conduct limited discovery before the Court rules on Defendant's motion.  Although *Guidotti* instructs the district courts, when applying the Rule 56 standard, to allow limited discovery before ruling on the motion to compel arbitration, here Plaintiff has not shown that limited discovery is warranted at this juncture. In her memorandum in opposition to the motion to compel arbitration, Plaintiff advanced purely legal arguments challenging the enforceability of the class action waiver provision, and failed to address or challenge Defendant's argument that a valid agreement to arbitrate existed between Plaintiff and RGIS.  Indeed, the first and only time Plaintiff argued that issues of fact *may* exist with regard to the formation of the agreement to arbitrate was at oral argument on the motion to compel arbitration, and it was only in response to the Court's question as to which legal standard should be

applied. [4]  Tr. at 34-35, 46.  Moreover, Plaintiff's counsel admitted at oral argument that he did not believe any of the averments in the Wilson Declaration were untrue.  Tr. at 37.  Nor has Plaintiff attempted to raise issues of fact or file a counter affidavit in her supplemental brief filed after the stay was lifted.   In light of these circumstances, the Court finds that the material facts can be gleaned from the evidence of record and are not disputed, and therefore, limited discovery is neither warranted nor necessary to rule on Defendant's motion.

---

[4] At oral argument, Plaintiff's counsel argued that he wanted an opportunity to show that Plaintiff may not have understood what rights she was giving up when she entered into the agreement to arbitrate, but could not point to any authority in support of this position, Tr. at 28-29, and asked that he be allowed to conduct limited discovery to counter the Wilson Declaration produced by Defendant.  Tr. at 35, 37.  At that point the Court interjected that he had not previously raised any issues of fact surrounding the contract formation, or produced a counter affidavit, and Plaintiff's counsel agreed, but stated that he would want to depose Defendant's affiant.  Tr. at 35.   As there is nothing in any of Plaintiff's filings placing her "understanding" at issue, any discovery along those lines is irrelevant to the legal issues pending before the Court.  More importantly, a party who executes a contract is presumed to know the terms of the contract she has signed, *see Quilloin v. Tenet HealthSystem Phila., Inc.,* 673 F.3d 221, 237 (3d Cir. 2012), and inquiries into the circumstances surrounding the formation of an arbitration agreement, including the party's education and experience, are not appropriate absent a showing of fraud, duress, mistake or some other recognized basis under contract law, *see Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 184 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp. Ala. v. Randolph,* 531 U.S. 79 (2000). *See also Morales v. Sun Constructors, Inc.,* 541 U.S. 218, 222 & 224 (3d Cir. 2008) (holding that "[i]n the absence of fraud, the fact that an [employee] cannot read, write, speak or understand the English language is immaterial to whether  . . . [the arbitration] agreement . . . is enforceable[;]" and reiterating its holding in *Seus* that "applying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA.") Here, there has been no suggestion, let alone a showing, of any fraud, duress, mistake or other recognized basis under contract law for invalidating the agreement to arbitrate, in any of Plaintiff's written submissions to the Court.  As such, the Court finds that Plaintiff is not entitled to conduct limited discovery into contract formation.

## C.    **Discussion**

The Federal Arbitration Act ("FAA") was enacted by Congress "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Puleo v. Chase Bank USA, N.A.,* *605 F.3d 172, 177-78 (3d Cir. 2010)* (en banc) (citing *Spinetti v. Serv. Corp. Int'l,* *324 F.3d* *212, 218 (3d Cir. 2003)* (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* *500 U.S. 20, 24* *(1991))*).  "The FAA ensures that arbitration agreements 'are enforceable to the same extent as other contracts' by establishing 'a strong federal policy in favor of the resolution of disputes through arbitration.'" *Id.* at 178 (quoting *Alexander v. Anthony* *Int'l, L.P.,* *341 F.3d 256, 263 (3d Cir.2003)*).  To accomplish this purpose, Congress provided in the FAA that a written arbitration provision in any contract "evidencing a transaction involving commerce" is valid and enforceable, except upon "such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2*.[5]  This exception is commonly referred to as the savings clause.

The Supreme Court further expounded upon Section 2 of the FAA in *American Express Co. v. Italian Colors Restaurant*:

> This text reflects the overarching principle that arbitration is a matter of contract. *See* *Rent–A–Center, West, Inc. v. Jackson,* *561 U.S. ––––, ––––, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403* *(2010)*.  And consistent with that text, courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc. v. Byrd,* *470 U.S. 213,* *221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)*, including terms

---

[5] The parties do not dispute that the contract in this case involves "commerce" as defined in *9 U.S.C. § 1*.

that "specify with whom [the parties] choose to arbitrate their disputes," *Stolt–Nielsen, supra, at 683*, 130 S.Ct. 1758, and "the rules under which that arbitration will be conducted," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).* That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been " 'overridden by a contrary congressional command.' " *CompuCredit Corp. v. Greenwood*, 565 U.S. ––––, ––––, 132 S.Ct. 665, 668–669, 181 L.Ed.2d 586 (2012) (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).

*Am. Express Co. v. Italian Colors Rest.*, ___ U.S. ___, 133 S. Ct. 2304, 2309 (2013).

Thus, arbitration agreements must be enforced according to their terms unless one of two exceptions applies:  (1)  the arbitration agreement is found to be invalid on one of the grounds that would invalidate a contract under the FAA's savings clause, or (2) "application of the FAA may be precluded by another statute's contrary congressional command." *D.R. Horton v. NLRB*, 737 F.3d 344, 358 (5th Cir. 2013) (citing *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  The Court will consider each exception.[6]

---

[6] The parties do not dispute that the enforceability of the class/collective action waiver provision in the Arbitration Agreement raises a question of arbitrability which the Court, and not the arbitrator, must decide.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-46 (1995)) (other citations omitted) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for the court to decide.").  Indeed, the Arbitration Agreement explicitly provides that "[d]isputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator".  DRP Booklet at 17.

1.      **Savings Clause Exception**

The Arbitration Agreement provides that a class/collective action filed in federal court may be litigated there *only if* the class/collective action waiver is found to be unenforceable.  *See* DPR Booklet at 17 (ECF No. 9-1 at 30).  Thus, Defendant's motion to compel arbitration should be denied only if the Court finds that the class action waiver provision is unenforceable.

In support of its motion to compel arbitration, RGIS cites several Supreme Court and Third Circuit cases upholding class action waivers in arbitration agreements governed by the FAA.  *See, e.g., Concepcion,* 563 U.S. 333, 352 (2011) (holding that the FAA pre-empted a state law, which classified most collective action arbitration waivers in consumer contracts as unconscionable, because the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]")(internal citation and quotation marks omitted); *Italian Colors Rest.,* 133 S.Ct. at 2309 (holding that the FAA did not allow courts to invalidate arbitration agreements because they prohibit class action arbitration of a federal law claim, absent a clear contrary congressional intent in the federal statute to override the FAA's mandate); *Litman v. Cellco P'ship,* 655 F.3d 225, 231 (3d Cir. 2011) ("We understand the holding of *Concepcion* to be both broad and clear:  a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration 'is desirable for unrelated reasons.'") (quoting *Concepcion,* 563 U.S. at 351)); *Puleo,* 605 F.3d at 188 (affirming decision compelling the parties to arbitrate on an individual basis

where the arbitration agreement contained an explicit class action waiver); *Quilloin*, 673 F.3d at 232 ("[E]ven if the agreement explicitly waived [plaintiff's] right to pursue class actions, the Pennsylvania law prohibiting class action waivers is surely preempted by the FAA under *Concepcion*.").

Although Plaintiff acknowledges the authority cited above enforcing class action waivers in arbitration agreements under the FAA, she directs the Court's focus to the savings clause of Section 2 of the FAA, which  provides, in relevant part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract.**" 9 U.S.C § 2 (emphasis added).  As the Supreme Court explained in *Concepcion*:

> The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492–493, n. 9 (1987).

563 U.S. at 339.

Here, Plaintiff submits that the class/collective action waiver provision violates her rights under § 7 and § 8 of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158 ("NLRA"), as well as the Norris LaGuardia Act, 29 U.S.C. § 101 *et seq.* ("NLA"), and

therefore, constitutes an illegal promise, which triggers the savings clause and makes the class action waiver unenforceable.   In support, Plaintiff cites *Kaiser Steel Corp. v. Mullens*, 455 U.S. 72, 77 (1982) (recognizing that "our cases leave no doubt that illegal promises will not be enforced in cases controlled by federal law.");[7] and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (noting that challenges to the validity of arbitration agreements under § 2 of the FAA can be divided into two types—"[o]ne type challenges specifically the validity of the agreement to arbitrate[,] . . . [while t]he other challenges the contract as a whole[.]"   In the latter category, a challenge may be brought upon the ground that the illegality of one provision in the contract renders the entire contract invalid.)

Thus, if the Court determines that the class action waiver does not violate the NLRA or the NLA, the savings clause is not implicated, and therefore, does not bar enforcement of the class action waiver.

### a.    Whether the RGIS Class Action Waiver Violates the NLRA

RGIS posits that "*no* federal Court of Appeals has *ever* held that an arbitration agreement with a class/collective action waiver is unenforceable under Section 7 of the NLRA where the employee could opt-out without consequences."   Def.'s Supp. Br. in

---

[7] In *Kaiser Steel*, the employer claimed a provision in a union contract violated § 8(e) of the NLRA and therefore was illegal, precluding enforcement of the provision.  The lower court had refused to entertain the employer's illegality defense and ordered enforcement of the contract term.  The Supreme Court disagree, holding that a court must entertain an illegality defense raised to preclude enforcement of a contract term where the statute allegedly violated is designed to protect the party raising the defense, and the defense is directed to a provision in the contract for which enforcement is sought.  455 U.S. at 86.

Supp. of Mot. to Compel Arbitration at 4 (ECF No. 34) (citing Def.'s Reply at 2-3 (ECF No. 17)).   Rather, Defendant submits that when courts of appeals have analyzed arbitration agreements containing a class action waiver and an opt-out provision—similar to the instant matter—they have held that the class action waivers are enforceable.   In support of this argument, RGIS relies on *Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072 (9th Cir. 2014), in which the court of appeals concluded that the class action waiver in the arbitration agreement did not violate Section 8 of the NLRA because the employee could opt out of the arbitration agreement.   *Id.* at 1076. RGIS also cites a number of district court cases from this circuit which have followed the Ninth Circuit's reasoning in *Johnmohammadi*.   *See, e.g., Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 673-74 (D. N.J. 2017); *Cavallo v. Uber Techs.,Inc.*, Civ. A. No. 16-4264 (FLW), 2017 WL 2362851, *6 (D. N.J. May 31, 2017).[8]

---

[8] In addition, RGIS points out that the Fifth Circuit recently issued an order granting a motion for summary disposition in RGIS' favor on its appeal of the NLRB's decision and order in *RGIS, LLC and Clara Harris*, Case No. 28-CA-136313, 363 N.L.R.B. No. 132 (N.L.R.B. Feb. 23, 2016), 2016 WL 737043.   *See* Order Granting Mot. for Summ. Disp., *RGIS, LLC v. N.L.R.B.*, Appeal No. 16-60129, Doc. 00513581443 (5th Cir. July 7, 2016) (ECF No. 9-5).   The DRP/arbitration agreement and class/collective action waiver in that case are identical to those at issue here. The Fifth Circuit granted summary disposition of RGIS' appeal, based on its previous decisions in *D.R. Horton v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013), and *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015).   In *D.R. Horton* and *Murphy Oil*, the Fifth Circuit rejected and denied enforcement of the NLRB's decision finding that the employer violated Section 8(a)(1) of the NLRA by maintaining a dispute resolution program under which employees are required, as a condition of employment, to submit their employment-related legal claims to individual arbitration, thereby compelling employees to waive their Section 7 right to pursue such claims through class or collective action in all forums, arbitral and judicial.   In support of its rejection of the NLRB's decision, the Fifth Circuit in *Murphy Oil* held that "(1) the NLRA does not contain a 'congressional command overriding' the . . . FAA[,] and (2) 'use of class action procedures . . . is not a substantive right' under Section 7 of the

In opposition, Plaintiff argues that on the fundamental issues before the Court, the reasoning of the Seventh Circuit in *Lewis* and the NLRB is "far more compelling" than the Ninth Circuit's decision in *Johnmohammadi*.  Tr. at 37.  As far as the other cases cited by Defendant, Plaintiff submits that the courts just "got it wrong."  Tr. at 38.

Plaintiff argues that the class/collection action waiver provision in the Arbitration Agreement violates § 7 and § 8 of the NLRA.  Plaintiff contends that Section 7 of the NLRA provides employees with a substantive right to engage in "concerted activity" which she maintains includes the right to bring a collective action under the FLSA.  By requiring her to sign the Arbitration Agreement, which contains a class/collective action waiver of employment related claims, including FLSA claims, Plaintiff submits that the Arbitration Agreement violates Section 8 of the NLRA, which

---

NLRA."  *Murphy Oil, 808 F.3d at 1016* (quoting *D.R. Horton, 737 F.3d at 357, 360-62*) (footnote omitted).  Significantly, the employment agreements in *Murphy Oil* and *D.R. Horton*, which waived, among other things, the right to bring a collective or class action, did not contain an opt-out provision.

RGIS also cites decisions from the Second and Eighth Circuits in which the courts of appeals have enforced class/collective action waivers in employee arbitration agreements without opt-out provisions.  *See Sutherland v. Earnst & Young LLP, 726 F.3d 290 (2d Cir. 2013)* (holding FLSA does not contain a "contrary congressional command" and therefore does not preclude the waiver of collective action claims; no opt-out provision); *Owen v. Bristol Care, Inc., 702 F.3d 1050, 1055 (8th Cir. 2013)* (same); *Cellular Sales of Missouri, LLC v. N.L.R.B., 824 F.3d 772, 776 (8th Cir. 2016)* (unfair labor charge under NLRA; declining to enforce NLRB's order, in part, and holding employer did not violate section 8(a)(1) of the NLRA by requiring its employees to enter into a mandatory arbitration agreement that included a waiver of class/collection actions in all forums to resolve employment-related disputes (with no opt-out provision)).  However, as the arbitration agreements in those cases were mandatory, i.e., did not contain an opt-out provision, the analyses focused on other legal arguments not considered here.  For that reason alone, this Court finds those cases inapposite on the question presented here: whether the inclusion of opt-out provision in an arbitration agreement waiving class actions constitutes a violation of the NLRA and NLA.

prohibits employers with interfering with or restricting employees' rights under Section 7.

In support, she relies on the recent decisions from the Sixth, Seventh and Ninth Circuits, as well as on several decisions by the NLRB.  *See NLRB v. Alternative Entm't, Inc.*, 858 F.3d 393, 408 (6th Cir. 2017) (court of appeals ordered enforcement of NLRB's decision, which found that a mandatory arbitration provision requiring employees to arbitrate all employment related claims on an individual basis, violated § 8(a)(1) of the NLRA, and therefore was not enforceable, reasoning that "[s]uch a provision violates the NLRA's guarantee of the right to collective action [a substantive right] and, because it violates the NLRA, falls within the FAA's savings clause."); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1155 & 1157 (7th Cir. 2016) (concluding that the class action waiver impinged on Section 7 rights, and "[c]ontracts that stipulate away employees' Section 7 rights or otherwise require actions unlawful under the NLRA are unenforceable[,]"and therefore met the criteria of the FAA's savings clause for nonenforcement.)[9]; *Morris v. Ernst & Young LLP*, 834 F.3d 975, 983-84 (9th Cir. 2016) (holding concerted action waiver was unenforceable where employer, who required employees to sign arbitration agreement waiving their rights to pursue work-related legal claims collectively,

---

[9] The arbitration agreement in *Lewis* did not contain an opt-out provision, a distinction that the court noted, but withheld any opinion as to the effect of such a provision on its decision, as it was undisputed in the case before it that the employer's arbitration provision, which limited Section 7 rights, was a condition of continued employment and therefore qualified as "interfer[ing] with" or "restrain[ing]" . . . employees in the exercise" of those rights in violation of Section 8(a)(1).  823 F.3d at 1155 (citing 29 U.S.C. §157(a)(1)) (internal quotation marks omitted).

interfered with employees' substantive right under § 7 of NLRA to engage in concerted activities, and therefore violated the NLRA).[10]   Of significant note, the arbitration agreements in each of these cases did not contain an opt-out provision.

Plaintiff also urges this Court to give deference to the NLRB's decision in *In re D.R. Horton, Inc.*, 3[57 NLRB no. 184, 357 NLRB 2277 (2012)](#), *enf. denied in part*, [737 F. 3d 344 (5th Cir. 2013)](#).[11]   In *D.R. Horton*, the Board concluded that requiring employees, as a condition of their employment, to sign an agreement that precluded them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial, unlawfully restricted the employees' Section 7 right to engage in concerted action for mutual aid or protection, and thus violated the NLRA.  [357 NLRB at 2289](#).  In addition, the Board concluded that its finding of a violation did not create a conflict between the NLRA and the FAA's policy of favoring enforcement of arbitration agreements because the FAA was not intended to disturb substantive rights.[12]   *Id.* at 2286-87.   The Board further

_____

[10] In *Morris*, the Ninth Circuit noted that in contrast to the mandatory arbitration agreement at issue there, no § 8 violation occurred in *Johnmohammadi*, a case decided by the Ninth Circuit in 2014, because the employee in *Johnmohammadi* could have opted out of the individual dispute resolution agreement and chose not to.  [834 F.3d at 982 n. 4](#).

[11] The court of appeals upheld the part of the Board's decision which found that the mandatory arbitration agreement was unlawful because the employees could reasonably construe it to prohibit filing charges with the NLRB.

[12] The NLRB opined that the right to engage in specified forms of associational activity under Section 7 of the NLRA, [29 U.S.C. § 157](#), is a substantive right.  [Id. at 2278](#).  As discussed below, the Court need not determine whether the right to bring a class/collective action is a substantive or procedural right, and therefore, offers no opinion as to this part of the NLRB's decision in *D.R. Horton*.

found that even if a conflict did exist, its finding accommodates the policies of the two statutes and is in accord with the Supreme Court's jurisprudence regarding the FAA.[13] *Id.* at 2287-88. Significantly, the arbitration agreement in *D.R. Horton* did not include an opt-out provision.

In the absence of any guidance from the Supreme Court or Third Circuit, the Court finds that the presence of an opt-out provision in the Arbitration Agreement distinguishes this case from *Lewis*, *Morris*, *Alternative Entertainment*, and the NLRB's decision in *D.R. Horton*, and is dispositive of Defendant's motion to compel arbitration. In this regard, the Court finds that the instant matter is most closely analogous to *Johnmohammadi,* and that the Ninth Circuit's analysis in that case is persuasive and adopts it here.

In *Johnmohammadi*, the plaintiff received a set of documents describing the company's dispute resolution program, which informed her that all employment related disputes would be resolved through arbitration unless she returned the enclosed form indicating she did not want to be covered by the benefits of arbitration. 755 F.3d at 1074. The *Johnmohammadi* court found that the plaintiff did not return the opt-out

---

[13] The Court notes, however, that it is not required to give deference to the Board's interpretation of the FAA, *see Tenet HealthSystem Phila., Inc. v. Rooney*, Civ. A. No. 12-mc-58, 2012 WL 3550496, *4 (E.D.Pa. Aug. 17, 2012) (citing *Allegheny Ludlum Corp. v. N.L.R.B.*, 301 F.3d 167, 174-75 (3d Cir. 2002); *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 529 n. 9 (1984)), or the NLA, *see Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 843-44 (N.D. Cal. 2012) (citing *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144 (2002) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527-34 (1984) ("While the Board's interpretation of the NLRA should be given some deference, the proposition that the Board's interpretation of statutes outside its expertise is likewise to be deferred to is novel"))).

form, her decision was fully informed and voluntary, and no threats of termination or retaliation were made to influence her decision. *Id.* By not opting out within the 30-day period, the court of appeals found that Johnmohammadi became bound by the terms of the arbitration agreement. *Id.*

Like the Plaintiff here, Johnmohammadi argued that the class action waiver was not enforceable under the NLRA and NLA, because filing a class action on behalf of fellow employees is one of the "other concerted activities" protected by the NLA and NLRA, and therefore, the class action waiver violates those statutes. *Id.* at 1074-75. While acknowledging that some authority existed to support plaintiff's position, the Ninth Circuit side-stepped this statutory construction issue, and instead focused on whether the arbitration agreement violated the NLRA, by examining whether her employer had interfered with, restrained, or coerced her in the exercise of her right to file a class action, as is required to show a violation under § 8.[14] *Id.* at 1075. The Ninth Circuit found that no basis existed for concluding that plaintiff's employer coerced her into waiving, or that it interfered with or restrained plaintiff in the exercise of, her right to file a class action. *Id.* at 1075-76. In so concluding, the Ninth Circuit reasoned that:

> [Plaintiff] had the right to opt out of the arbitration agreement, and had she done so she would be free to pursue this class action in court. Having freely elected to arbitrate employment-related disputes on an individual basis, without interference from [her employer], she cannot claim

---

[14] While § 7 of the NLRA grants covered employees the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[,]" 29 U.S.C. § 157, § 8(a)(1) makes it illegal for an employer "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157[,]" 29 U.S.C. § 158(a)(1).

> that enforcement of the agreement violates either the Norris-
> LaGuardia Act or the NLRA.

*Id.* at 1077.  Therefore, the Ninth Circuit held that the arbitration agreement was valid, and under the FAA, must be enforced according to its terms.  *Id.* at 1076.  Several district courts have reached the same conclusion based on *Johnmohammadi*. *See, e.g., Bruster v. Uber Techs., Inc.*, No. 15-CV-2653, 2016 WL 4086786, *3 (N.D. Ohio Aug. 2, 2016) (holding that under *Johnmohammadi*, the arbitration agreement did not impinge on plaintiff's rights under the NLRA because plaintiff could have opted out of arbitration); *Singh*, 235 F. Supp. 3d at 673-74 (holding that where employee had option to opt-out of individual arbitration, the agreement to arbitrate was voluntary and therefore did not violate § 8 of the NLRA) (citing *Johmohammadi*, 755 F.3d at 1075-76) (footnote omitted); *Cavallo*, 2017 WL 2362851, *6 (same).

The record evidence here shows that RGIS did not require Plaintiff to accept a class action waiver as a condition of employment.  Plaintiff received both an electronic version and hard copy of the DRP Booklet.  The DRP Notice Letter that Plaintiff received on her date of hire informed her that she could opt-out of the DRP by submitting the Exclusion Form within 60 days of her hire date.  Plaintiff electronically signed an Acknowledgement, which specifically stated that she understood that she was covered by all five phases of the DRP unless she returned the Exclusion Form within 60 days of her hire date, and that the DRP requires all employment related claims be submitted to binding arbitration on an individual basis.  Plaintiff did not submit an Exclusion Form to RGIS within 60 days of her hire date or any time

thereafter.  Wilson Decl., ¶¶ 8, 9, 11 & 13; Exs. D & F attached thereto; DRP Booklet at p. ii, 11.  Thus, Plaintiff was fully informed about the consequences of failing to submit the Exclusion Form, yet she chose not to opt-out.

In addition, there is nothing in the record to suggest that RGIS threatened, either expressly or impliedly, to terminate or retaliate against her if she chose to opt-out of the DRP.  To the contrary, Ms. Wilson, RGIS's manager of human resources, stated that "[p]articipation in the DRP is completely voluntary and an employee's election to participate in, or opt out of, the DRP has no negative effect on his or her employment with RGIS."  Wilson Decl., ¶ 6.  In addition, RGIS maintains safeguards to ensure the confidentiality of any Exclusion Forms submitted by employees so that local management is unaware of whether a particular employee has requested exclusion.  *Id.* Under these circumstances, the Court cannot find that RGIS coerced Plaintiff into waiving her right to file a class action.

Moreover, the record does not contain any evidence that would lead this Court to conclude that Plaintiff's decision not to opt-out was anything other than voluntary. Plaintiff has not presented any evidence to suggest that RGIS interfered with or restrained her in the exercise of her right to file a class action.  Rather, Plaintiff was given a choice—resolve future employment-related disputes in court on a collective basis, or resolve such disputes individually through arbitration.  Without any suggestion of coercion influencing her decision, the Court fails to see how asking Plaintiff to choose between these two options can be viewed as interfering with or restraining her right to bring a class action.

Thus, having freely chosen to arbitrate employment-related disputes on an individual basis, without interference from RGIS, Plaintiff cannot show that enforcement of the class action waiver violates the NLRA.

The NLRB's decision in *D.R. Horton* does not convince this Court to rule otherwise, as the Court finds that the NLRB's decision carries little persuasive authority. First, the Court observes that the arbitration agreement in *D.R. Horton*, unlike the present action, was mandatory and thus, did not include an opt-out provision. Moreover, the NLRB's decision in *D.R. Horton* is limited to arbitration agreements that bar *all* protected concerted actions. *Owen*, 702 F.2d at 1053 (citing *D.R. Horton*, 357 NLRB at 2288). In contrast, the Arbitration Agreement here does not preclude Plaintiff from filing a claim with an administrative agency, *see* DRP Booklet at 12 (ECF No. 9-1 at 25), such as the Department of Labor (which has jurisdiction over FLSA claims, *see* 29 U.S.C. § 204) or the NLRB, either of which can file suit on behalf of a class of employees. *Id.* at 1054 (arbitration agreement with a collective action waiver does not fall within the parameters of the NLRB's decision where the agreement "does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor "which has jurisdiction over FLSA claims[,]" and when "nothing in the [agreement] precludes any of these agencies from investigating and, if necessary, filing suit on behalf of a class of employees."); *Torres v. United Healthcare Servs., Inc.*, 920 F. Supp. 2d 368, 379 (E.D.N.Y. 2013) (same) (citing *Owens*, 702 F.2d at 1054). Finally, the United States Court of Appeals for the Fifth Circuit refused to enforce the Board's decision invalidating the class action waiver. *D.R. Horton*, 737 F.3d

at 364. Therefore, the Court declines to give deference to the NLRB's decision in *D.R. Horton*.[15]

   Plaintiff further argues that the inclusion of an opt-out provision does not save the individual arbitration provision, relying on two NLRB decisions, *Assignment Staffing Servs., Inc.*, 362 N.L.R.B. No. 189, 2015 WL 5113231 (Aug. 27, 2015), *rev'd per curiam*, *On Assignment Staffing Servs., Inc. v. NLRB*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016), and *RGIS, LLC and Clara Harris*, 363 N.L.R.B. No. 132, 2016 WL 737043 (Feb. 23, 2016), *rev'd per curiam*, *RGIS, LLC v. NLRB*, No. 16-60129, Doc. 00513581443 (5th Cir. July 7, 2016) (ECF No. 9-5).[16] The Court finds no merit to this argument. In both of these

---

[15] The case at bar and *D.R. Horton* also differ in the procedural paths they took—in the instant matter, RGIS has filed a motion to compel individual arbitration in a pending FLSA (and PMWA) class/collective action filed in federal court. In *D.R. Horton*, the charging party attempted to bring a class action *in arbitration* for alleged violations of the FLSA, but was notified by employer's counsel that his notice of intent to arbitrate was ineffective because the arbitration agreement barred collective claims. Consequently, the charging party filed an unfair labor practice charge with the NLRB, and General Counsel issued a complaint alleging that the employer violated Sections 8(a)(1) and (1)(4) of the NLRA by maintaining the arbitration provision that waived class/collective actions, and thus interfering with employee access to the NLRB. 357 NLRB at 2277-78. The importance of this distinction is that in *D.R. Horton*, the NLRB was focused on rights created by the NLRA, while in the case at bar, the actual right underlying this lawsuit was created by the FLSA and PMWA, not the NLRA. Therefore, the substantive purposes of the FLSA and PMWA, not the NLRA, would be the most relevant here, *see Joseph v. Quality Dining, Inc.*, 244 F. Supp. 2d 467, 474-75 (E.D. Pa. 2017) (holding class action waiver in mandatory arbitration agreement did not violate the NLRA), if the Count found it necessary to decide whether the right to bring collective/class actions is substantive versus procedural. However, as discussed below, such an inquiry is unnecessary to dispose of the motion to compel arbitration.

[16] In her supplemental brief, Plaintiff also relies on *Chan v. Fresh & Easy, LLC (In re Fresh & Easy, LLC)*, No. 15-12220 (BLS), Adv. No. 15-51897 (BLS), 2016 Bankr. LEXIS 3690 (Bankr. D. Del. Oct. 11, 2016), and *Curtis v. Contract Mgmt. Servs.*, No. 1:15-cv-487-NT, 2016 U.S. Dist. LEXIS 134129 (D. Me. Sept. 29, 2016), in which the courts found that an opt-out provision did not render an individual arbitration policy enforceable under the

cases, the NLRB interpreted the NLRA to invalidate arbitration agreements that prohibit employees from participating in class action lawsuits, even though the agreements contained opt-out provisions. *On Assignment Staffing Servs.*, 2015 WL 5113231, at *6-7 (finding that "the fact that employees must take any steps to preserve their Section 7 rights burdens the exercise of those rights[;]" and the "opt-out procedure interferes with Section 7 rights because it requires employees who wish to retain their right to pursue class or collective claims to 'make an 'observable choice that demonstrates their support for or rejection of'' concerted activity . . . [and] forces them to reveal their sentiments concerning Section 7 activity.") (quoting *Allegheny Ludlum Corp.*, 333 NLRB 734, 740 (2001), *enf'd* 301 F.3d 167 (3d Cir. 2002)[17]; *RGIS, LLC*, 2016 WL 737043, at *2 n. 3 (holding that "[a]n opt-out procedure still imposes an unlawful mandatory condition of employment that falls squarely within the rule of *D. R. Horton* and affirmed in *Murphy Oil*," and even if the opt-out procedure was considered non-mandatory, the dispute resolution program was still unlawful "because it requires employees to prospectively waive their Sec. 7 right to engage in concerted activity.") (citing *On Assignment Staffing Servs.*, 2015 WL 5113231, at *5-8) (other citation omitted).

---

NLRA. Both of these courts rejected the Ninth Circuit's decision in *Johnmohammadi* and gave deference to the NLRB's decisions in *On Assignment Staffing Services*. *Chan*, 2016 Bankr. LEXIS 3690, at * 29-36; *Curtis*, 2016 U.S. Dist. LEXIS 134129, at *14-19. This Court does not find either of these cases, which are non-binding, trial court decisions, persuasive for the reasons discussed in this section.

[17] *Allegheny Ludlum* has no bearing on the present matter, as that case did not involve enforcement of a mandatory arbitration agreement, but rather, involved the unlawful polling of employees by soliciting their participation in a videotape to be used as part of the employer's antiunion campaign presented to employees prior to the election. 333 NLRB at 734.

However, the Fifth Circuit reversed the decision of the NLRB in both of these cases.  A number of district courts have refused to give any weight to the NLRB's decision in *On Assignment Staffing Services* based on the Fifth Circuit's reversal of that decision.  *See, e.g., Cavallo*, 2017 WL 2362851, at *7 (declining to attribute any weight to the NLRB's interpretation of the NLRA in *On Assignment Staffing Servs.*, because the NLRB's decision was ultimately reversed by the Fifth Circuit); *Scroggins v. Uber Techs., Inc.*, No. 1:16-cv-01419-SEB-MJD, 2017 WL 373299, *3 (S.D. Ind. Jan. 26, 2017) (noting that *On Assignment Staffing* was summarily reversed by the Fifth Circuit and declining to defer to that reversed NLRB decision, since the Seventh Circuit expressly declined to resolve the issue of the opt-out provision in *Lewis* without referencing *On Assignment Staffing*).  *See also Lamour v. Uber Techs., Inc.*, No. 16-21449, 2017 WL 878712, *12 (S.D. Fla. Mar. 1, 2017) ("Because there is overwhelming appellate court precedent against the *On Assignment* decision, it is not entitled to deference by this Court, nor will I deem it persuasive authority.").

Moreover, the confidentiality concern that the NLRB articulated in *On Assignment Staffing Services* is not present in the case at bar.  Here, RGIS presented uncontroverted evidence which shows that it takes steps to ensure that local management will not be aware of whether an employee has requested exclusion from the DRP.  In her declaration, Nicole Wilson, RGIS' manager of human resources, stated that "[a]ny employee seeking to opt out of the program is required to mail the Exclusion Form directly to RGIS' Office of Dispute Resolution[, . . . [and o]nly a select few company employees have access to the records of employee exclusions."  Wilson Decl.

28

at ¶¶ 1, 6.   An employee's Exclusion Form is "accessed only when that information becomes relevant to handling an employee's specific claim or dispute."   *Id.*   That is exactly what happened here.   After this lawsuit was commenced, Ms. Wilson directed the Office of Dispute Resolution to review its electronic file to determine whether Plaintiff had returned an Exclusion Form.   *Id.* at ¶ 13.   The Office of Dispute Resolution found that its records indicated that Plaintiff had not returned an Exclusion Form, or that she ever contacted the RGIS Office of Dispute Resolution with questions about the DRP or to decline the terms of the DRP.   *Id.*

Finally, no court of appeals which has considered the enforceability of a class action waiver in an arbitration agreement which contained an opt-out provision has held that the class action waiver violates the NLRA or NLA, or is otherwise unenforceable.   *See Lamour*, 2017 WL 878712, *12 ("Five Circuits have squarely addressed whether and when a class and collective action waiver may violate the NLRA, and none have held that a class waiver in a voluntary arbitration agreement— e.g., one with an opt–out clause—violates the NLRA.").

Accordingly, the Court concludes that the weight of the relevant authority discussed above supports a finding that the inclusion of an opt-out provision to the DRP, which otherwise requires individual arbitration of all employment related disputes, does not violate the NLRA, where there is no evidence that RGIS interfered with, restrained, or coerced Plaintiff's decision not to opt-out.   Moreover, the Court finds that based on *Johnmohammadi*, the opt-out provision is dispositive of the issues presented in this case.   Therefore, the Court need not address whether the phrase

"concerted activity" in Section 7 of the NLRA can be interpreted to include FLSA collective actions, or whether the right to engage in concerted activities is a substantive or procedural right.

### b.    The Class Action Waiver Does Not Violate the NLA

Plaintiff also contends that the NLA provides a basis for invalidating the class action waiver provision.  In particular, Plaintiff points to language in sections 2 and 3 of the NLA, 29 U.S.C. §§ 102-103, which, she contends, when taken together, provide that "'any . . . undertaking or promise in conflict with the public policy' that employees 'shall be free from the interference . . . of employers in . . . concerted activities for the purpose of . . . mutual aid or protection' 'shall not be enforceable in any court of the United States and shall not afford any basis for the granting of legal or equitable relief by any such court.'"  Pl.'s Br. in Opp'n at 10 (quoting 29 U.S.C. §§ 102-103).

Plaintiff contends that the language and structure of § 3 of the NLA make clear that the NLA was intended to do more than merely bar enforcement of contracts prohibiting union membership, but also, denies enforcement to a broad array of "yellow dog contracts"[18] that would bar concerted activity to improve working conditions.  Similarly, Plaintiff argues that § 4 of the NLA evinces a Congressional intent to protect a broad range of concerted activity intended to improve working conditions, expressly including collective litigation, citing subsections (d) and (h) of § 4,

---

[18] "Yellow dog" contracts are contracts prohibiting employees from joining labor unions or requiring employees to quit if they join a union.  *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 843 (N.D. Cal. 2012).

29 U.S.C. § 104.  Plaintiff's argument is drawn directly from the NLRB's decision in *D.R. Horton*, 357 NLRB at 2281-82.  Other than the NLRB's decision in *D.R. Horton*, Plaintiff fails to cite any authority to support her argument that the NLA bars enforcement of class action waivers.

In response, Defendant submits that Plaintiff has misstated the relevance of the NLA.  To this end, Defendant argues that in enacting the NLA, Congress attempted "to correct the abuses that had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management[,]" citing, in support, *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 251 (1970), *overruled on other grounds by Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397 (1976).  In other words, according to Defendant, "Congress passed the [NLA] to curtail and regulate the jurisdiction of courts, not . . . to regulate the conduct of people engaged in labor disputes."  *Marine Cooks & Stewards, AFL v. Panama S.S. Co.*, 362 U.S. 365, 372 (1960).  Thus, Defendant submits, that the scope of the NLA does not reach arbitration agreements, and cannot be read to invalidate such agreements, citing, in support, *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 458-59 (1957); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 844 (N.D. Cal. 2012).

The Court agrees with Defendant that the NLA does not apply to the Arbitration Agreement at issue here.  The same or similar argument to the one advanced by Plaintiff was raised and considered by a number of district and appellate courts, and the majority of those courts have rejected Plaintiff's argument, finding that the NLA does not apply to arbitration agreements.  *See, e.g., Morvant*, 870 F. Supp. 2d at 843 ; *Ryan v.*

31

*JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 565-66 (S.D.N.Y. 2013) (citing 29 U.S.C. §

103(a) & (b); *Morvant*, 870 F. Supp. 2d at 843-44); *Cilluffo v. Central Refrigerated Servs.,*

*Inc.*, No. EDCV 12-00886 (VAP(OPx), 2012 WL 8523507, *8 (C.D. Cal. Sept. 24, 2012)

(citing *Morvant*, *supra*) (other citation omitted); *see also D.R. Horton*, 737 F.3d at 362 n. 10

(finding that the NLRB's reasoning drawn from the NLA was unpersuasive); *Owen*, 702

F.3d at 1053 (rejecting plaintiff's argument that in enacting the NLA, Congress intended

to override the FAA); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n. 8 (2d Cir.

2013) (declining to follow the NLRB's decision in *D.R. Horton* "that a waiver of the right

to pursue a FLSA claim collectively in any forum violates the [NLRA,]" and impliedly,

the NLA);[19] *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669, (W.D. Va. 2014) (finding that

a dispute resolution process agreement, which contained an implied class waiver, did

not violate the NLRA or NLA) (citing *D.R. Horton, 737 F.3d at 362*); *Noffsinger-Harrison*

*v. LP Spring City, LLC*, No. 1:12-CV-161, 2013 WL 499210, *6 (E.D. Tenn. Feb. 7, 2013)

(holding that the NLA did not prevent the enforcement of an agreement to arbitrate

employment claims involving an alleged violation of the FMLA).

     As many of the courts in the above cases observed, the NLRB's interpretation of

the NLA in *D.R. Horton* is not entitled to deference.  *See Morvant*, 870 F. Supp. 2d at 843-

44 (citing *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144 (2002) (citing *NLRB*

---

[19] In *Patterson v. Raymours Furniture Co., Inc.*, the court of appeals noted that the parties
in *Sutherland* extensively briefed their arguments under the NLRA and the NLA, and
the *Sutherland* court rejected those arguments when it unquestionably rejected the
NLRB's analysis.  659 F. App'x 40, 43 (2d Cir. 2016) (citing *Sutherland*, 726 F.3d at 297 n.
8). In so doing, the *Sutherland* court impliedly rejected the argument that the class action
waiver violated the NLA.

*v. Bildisco & Bildisco*, 465 U.S. 513, 527-34 (1984) ("While the Board's interpretation of the NLRA should be given some deference, the proposition that the Board's interpretation of statutes outside its expertise is likewise to be deferred to is novel"))); *D.R. Horton*, 737 F.3d at 362 n. 10 (citing *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992)) ("It is undisputed that the NLGA is outside the Board's interpretative ambit.")   Thus, the Court is not bound by the Board's interpretation of the NLA in *D.R. Horton*.   Moreover, the United States Court of Appeals for the Fifth Circuit refused to enforce the Board's decision invalidating the class action waiver.   *D.R. Horton*, 737 F.3d at 364.   The court of appeals concluded that the Board's reasoning drawn from the NLA was unpersuasive. *Id.* at 362 n. 10.

Similarly here, the Court finds that the NLRB's holding in *D.R. Horton* carries little persuasive authority, as it is limited to arbitration agreements that bar *all* protected concerted actions, *Owen*, 702 F.2d at 1053 (citing *D.R. Horton*, 2012 WL 36274, at *16), and, in any event, was denied enforcement in relevant part by the Fifth Circuit. In contrast, the Arbitration Agreement here does not preclude Plaintiff from filing a claim with an administrative agency, *see* DRP Booklet at 12 (ECF No. 9-1 at 25), such as the Department of Labor (which has jurisdiction over FLSA claims, *see* 29 U.S.C. § 204), which can file suit on behalf of a class of employees.   *Id.* at 1054 (arbitration agreement with a collective action waiver does not fall within the parameters of the NLRB's decision where the agreement "does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor "which has jurisdiction over FLSA claims[,]" and when "nothing in the [agreement] precludes any of these

agencies from investigating and, if necessary, filing suit on behalf of a class of employees."); *Torres v. United Healthcare Servs., Inc.*, 920 F. Supp. 2d 368, 379 (E.D.N.Y. 2013) (same) (citing *Owens*, 702 F.2d at 1054).[20]

Moreover, several district courts have opined that section 3(a) and (b) of the NLA specifically identifies those contracts to which it applies, and an agreement to arbitrate is not one of the contracts listed. *Morvant*, 870 F. Supp. 2d at 844 (citing 29 U.S.C. § 103(a) & (b)); *Scroggins v. Uber Techs., Inc.*, No. 1:16-cv-01419-SEB-MJD, 2017 WL 373299,

---

[20] The Court also finds instructive decisions from the First and Third Circuits, which found that the NLA does not bar enforcement of agreements to arbitrate in collective bargaining agreements. *See, e.g.*, *Local 205, United Electrical, Radio & Machine Workers of Am. v. General Electric Co.*, 233 F.2d 85, 90 (1st Cir. 1956), *aff'd* 353 U.S. 547 (1957) ("[I]t is our conclusion that jurisdiction to compel arbitration is not withdrawn by the Norris-LaGuardia Act."); *Nursing Home & Hosp Union No. 434 AFL-CIO-LDIU by Mackson v. Sky Vue Terrace*, Inc., 759 F.2d 1094, (3d Cir. 1985) (citing *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970)) (A narrow exception to general prohibition of federal court injunctions in labor disputes under the NLA exists "where involvement of federal courts is necessary to further another fundamental labor policy—that of encouraging and promoting the voluntary resolution of labor disputes through arbitration."). Although *Sky Vue Terrace* involved a collective bargaining agreement, the court of appeals discussion of the application of the *Boys Markets* exception is instructive. In that case, the court of appeals observed that the Supreme Court, in *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397 (1976), emphasized that the *Boys Markets* exception should be applied narrowly, and noted the Court's reasoning:

> that the justification for a *Boys Markets* injunction is not to remedy a breach of the collective bargaining agreement, but instead solely to enforce the promise to arbitrate. Thus, a *Boys Markets* injunction is appropriate only where necessary to prevent conduct that threatens or frustrates the arbitral process agreed to by the parties. *See, e.g.*, *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1282 (3d Cir.1979).

759 F.2d at 1098.

*3 (S.D. Ind. Jan. 26, 2017) (same) (citing *Morvant, supra*); *see also Ryan*, 924 F. Supp. 2d at 565-66 (finding the NLA does not apply to binding agreement to arbitrate all employment- related claims which included a class action waiver) (citing § 103(a) & (b) and *Morvant, supra*).

In addition, enforcement of private arbitration agreements does not appear to be one of the abuses that the NLA was created to eliminate.[21]   The Supreme Court's decision in *Lincoln Mills* also supports this conclusion.   In that case, the Supreme Court held that orders to compel arbitration are not subject to the strict procedural requirements of § 7 of the NLA.   *Lincoln Mills*, 353 U.S. at 468.   In that case, the Supreme Court noted that the failure to arbitrate was not one of the abuses of power to enjoin listed in § 104 against which the NLA was aimed.   *Id.*   It concluded that since "[t]he congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes [was] clear, there is no reason to submit them to the requirements of § 7 of the [NLA]."   *Id.* at 458-59.

---

[21] The NLA was enacted in response to a situation that existed in the early 1900's, where the federal courts generally were regarded as allies of management in its attempt to prevent the organization and strengthening of labor unions through the issuance of injunctions against the activities of labor groups.   *Boys Markets*, 398 U.S. at 250.   As a result, a large number of sweeping decrees were issued, often ex parte, on an ad hoc basis without any elaboration of national labor policy.   *Id.* (citation omitted).   Thus, in 1932, Congress enacted the NLA in an attempt "to bring some order out of the industrial chaos that had developed and to correct the abuses that had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management."   *Id.* at 251 (citing Declaration of Public Policy, Norris-LaGuardia Act, § 2, 47 Stat. 70).   *See also United Steelworkers of Am., AFL-CIO v. Blaw-Knox Foundry & Mill Machinery, Inc.*, 319 F. Supp. 636, 640 (W.D. Pa. 1970) (citing *Boys Markets*, 398 U.S. 235) ("[I]t was the intent of Congress in passing the Norris-LaGuardia Act to correct abuses which had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management.").

Accordingly, in the absence of binding precedent,[22] the Court finds that the weight of the authority discussed above supports the conclusion that the NLA does not apply to the Arbitration Agreement at issue here.

Nonetheless, even if the Supreme Court would find that private arbitration agreements are subject to the NLA, the Arbitration Agreement here must still be enforced because the class action waiver does not violate the NLA, for the reasons set forth above with regard to the NLRA.  The Arbitration Agreement contains an opt-out provision, and therefore, Plaintiff cannot show that RGIS interfered with the exercise of her rights under the NLA or restrained her from exercising those rights. *Johnmohammadi*, 755 F.3d at 1077 (finding that an employee who has "freely elected to arbitrate employment-related disputes on an individual basis, without interference from [an employer] . . . cannot claim that enforcement of the agreement violates . . . the Norris-LaGuardia Act . . .."); *Singh*, 235 F. Supp. 3d at 673 n. 11 (because the arbitration agreement contained an opt-out clause, it did not violate the NLA for the same reason it did not violate the NLRA) (citing *Johnmohammadi*, 755 F.3d at 1077).

For all of these reasons, the Court concludes that the NLA does not bar enforcement of the class action waiver.  Accordingly, the NLA does not provide a basis, under the savings clause, for barring enforcement of the class action waiver provision.

---

[22] The Court notes that on October 2, 2017, the Supreme Court heard argument in the three related cases involving the enforceability of class action waivers in mandatory arbitration agreements.  *See* note 1, *supra*.  One of the legal issues touched upon was whether the private arbitration agreements in those cases violated the NLA.  The Third Circuit also has an appeal pending in *The Rose Group*, which involves the same issue.

### 2.     Contrary Congressional Command Exception

Having found that the FAA's savings clause exception does not apply, Plaintiff can only avoid enforcement of the Arbitration Agreement, according to its terms, if she can show that the contrary congressional command exception for overriding the FAA applies here.   The party challenging the arbitration agreement bears the burden of establishing that Congress intended to preclude a waiver of a judicial forum.  *Gilmer*, 500 U.S. at 26.  "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes."  *Id.* (citing *McMahon*, 482 U.S. at 227).

The Court finds that based on its rulings above, Plaintiff is precluded from showing that a contrary congressional command to override the FAA exists in either the NLRA or the NLA.  Because the Court has found that the voluntary class/collective action waiver does not violate either the NLRA or the NLA, a conflict between the FAA and those statutes simply does not exist. Without such a conflict, it is simply irrelevant whether a contrary congressional command to override the FAA can be gleaned from either the NLRA or the NLA.  *See Ryan*, 924 F. Supp. 2d at 559, n. 4  ("Because the Court finds the NLA and NLRA do not preclude individual arbitration, it need not reach the parties' arguments whether the FAA, NLA, and NLRA are in conflict.")

Accordingly, the Court finds that the contrary congressional command exception does not provide a basis for barring enforcement of the Arbitration Agreement.

D.    **Conclusion**

For the reasons set forth above, the Court finds that the inclusion of an opt-out provision to the DRP, which otherwise requires individual arbitration of employment-related disputes, does not violate the NLRA or the NLA, where there is no evidence that RGIS interfered with, restrained or coerced Plaintiff's decision not to opt-out of individual arbitration.   Therefore, the class action waiver contained in the Arbitration Agreement is valid and enforceable, and must be enforced according to its terms.  *Italian Colors*, 133 S.Ct. at 2309.   Accordingly, the Court recommends that Defendant's Motion to Compel Arbitration, and to Strike Class/Collective Allegations, and Stay the Litigation be granted.   Specifically, it is recommended that the case be stayed until the arbitrator resolves Smith's individual claims and that the class/collective action allegations be stricken from the Complaint.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, Plaintiff is allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  October 6, 2017

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

cc:    All Counsel of Record
       *Via CM/ECF Electronic Mail*